ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

JACOB B. PEDRICK

*v.*

ALFRED C. PEDRICK et al.

1. A father bequeathed to his son Jacob one-third of the residue of his estate, amounting to $18,000, to be paid to Jacob by his executor at such times, and in such sums, as the executor should deem most for the son's good, directing that, if the son should not make a proper use of " his money," the executor should pay him no more than sufficient to board and clothe him in a decent and respectable manner, and providing that if Jacob should die before

313

Pedrick *v.* Pedrick.

he should receive the whole of his money, without leaving lawful issue, the balance should fall into the residue of his estate, but if Jacob should leave lawful issue that the balance should be paid to them in equal shares.

2. The person named as executor in the will died after he had paid Jacob portions of the income of the legacy, but none of the principal.—*Held*, (1) that the power bestowed was not given to the person appointed executor as an individual, but *ratione officii*, and survived him; (2) that the power was imperative, partaking of the character of a trust to be executed; (3) that it required that sufficient portions of the legacy should be paid to Jacob to test the propriety of paying the balance of the legacy to him; (4) that the payments heretofore made to Jacob have not been sufficiently large to test the propriety of paying him the balance, and that the proofs are not sufficient to satisfy the chancellor that it is proper to pay it; (5) that the chancellor will execute the power, and, in so doing, will appoint a trustee to hold the fund for disposal by its direction; (6) that such trustee will be directed to now pay $5,000 to Jacob, and to invest the remainder of the fund; (7) that after Jacob shall have had the $5,000 long enough to test his ability to manage it and his strength to withstand the temptations to which its possession will expose him, he may apply for direction that the remainder of the legacy be paid to him.

On final hearing on bill, answer, replication and proofs.

*Mr. Martin P. Grey*, for the complainant.

*Mr. Howard M. Cooper* and *Mr. Alfred Hugg*, for the answering defendants.

THE CHANCELLOR.

The complainant is a son of Joseph D. Pedrick, late of Camden, in this state. He seeks the payment of $18,000, with interest, which is now in the control and custody of the administrators of the deceased executor of his father's will.

Joseph D. Pedrick died in 1873, leaving his last will, dated October 14th, 1869, which, after making provision for his wife and daughter, continues in the following language:

"*Fourth.* All the rest and residue of my estate whatsoever and wheresoever (after the above-mentioned bequests and devises are excepted) I give, devise and dispose of, as follows:

"One equal third part thereof to my son Jacob B. Pedrick, to be paid to him by my executor at such times and in such sums as he, my said executor, shall deem most for his good, and if my said son shall not make a proper use

of his money, then I direct my said executor to pay him no more than will be necessary to board and clothe him in decent and respectable manner. And if the said Jacob B. Pedrick shall happen to die before receiving the whole of his money and without leaving lawful issue, then I direct that the balance shall go into and make part of the residue of my estate; if he shall leave lawful issue the said balance to be paid to them, in equal shares."

Another third of the residue was given to the testator's son Alfred C. Pedrick and his three children, to be divided equally between them, and the remaining third was given to the testator's daughter, Josephine.

The seventh paragraph of the will makes disposition of a second and further residue to the testator's children, the children of a deceased child taking their parent's share. The purpose of the latter paragraph was obviously, among other things, to provide for the falling in of the whole or a portion of Jacob's share of the estate, in the event of his dying without issue, before it should be paid to him.

Thomas W. Hurff was appointed executor of the will, and, after duly proving it, assumed its execution. He paid to Jacob small portions of the income of the bequest for him, from time to time, for several years. In 1875 he presented an account to the orphans court of Camden county, purporting to be his final account, which was duly audited and allowed. After the allowance of this account Alfred C. Pedrick and his three children, Joseph, Alfred and Charles, and Josephine Pedrick, who was then the wife of John F. Hawkins, receipted for their shares of their father's estate and released the executor from liability therefor. Jacob also receipted for the moneys that had been paid to him and released the executor. Notable portions of his receipt and release are as follows :

"Whereas Joseph F. Pedrick, deceased, * * * in and by his last will and testament in writing, duly proved, * * * did, among other things, give and bequeath to Jacob B. Pedrick one-third of the rest and residue of his estate, and did therein and thereby appoint Thomas W. Hurff * * * to be the executor thereof. And whereas the said executor hath paid to said Jacob B. Pedrick on account of his said share of said estate at various times various sums of money, leaving a balance in the hands of said executor, amounting to eighteen thousand dollars: Now, therefore, Jacob B. Pedrick in

consideration * * * releases the executor from any and all claims and demands of, in and to said estate or against said executor on account of the balance ascertained to be in the hands of said executor on the third day of January, eighteen hundred and eighty-five, * * * provided, however, that said balance of eighteen thousand dollars in the hands of said executor shall be held by him in trust for me and to my use and benefit, and that said executor yearly, and every year hereafter, on the third day of the months of January, April, July and October of each year, shall pay me the interest on said balance of eighteen thousand dollars so held by him as aforesaid, at the rate of five per centum per annum, the first of said payments to be made on the third day of April next."

It is claimed for the complainant that this release declares a trust as regards the $18,000 inconsistent with the holding of that money by Mr. Hurff under the provisions of the will, and must therefore be taken as an exercise of the power bestowed upon the executor by the will.

The testimony shows that the taking of this release and the releases from the legatees was superintended by George W. Bailey, the son-in-law and business agent of Mr. Hurff, who had theretofore had the principal management of the Pedrick estate. It was not signed by Mr. Hurff, and it does not appear that he knew anything of its terms. But, assuming that he did know the terms, they do not necessarily amount to an exercise of the power which the will conferred upon him. The release receipts for portions only of the moneys bequeathed for Jacob's benefit, and acknowledges that the sum of $18,000 *remains* in the executor's hands. If it had been intended to declare an exercise of the power, the release would have receipted for the $18,000 as having been paid, and would not have spoken of it as remaining in the executor's hands. The object of the declaration of trust in the release appears to have been merely to ascertain the amount held under the will and to agree as to payment to be thereafter made therefrom. The executor had theretofore been paying Jacob less than the income derived from the bequest for Jacob's benefit. He had not ventured to entrust him with any of the principal. By the release he agreed to increase the payment to the full amount of the income and stated times when they would be made.

The testimony touching the transaction at which this paper was given supports this interpretation of the release.   Jacob says that Mr. Bailey counted up the money, paid him $219.16 to reduce the amount to exactly $18,000, and then promised that "in time" he would give "me some more; but he never did." Throughout his testimony, Mr. Bailey speaks of the $18,000 as being a portion of Joseph D. Pedrick's estate held for the benefit of Jacob under the provisions of the will.   Evidently the parties to the transaction at which the release was given, did not consider the power, conferred by the will, to have been exercised. Besides, the bill in this cause, in express terms, bases its prayer for relief upon allegation that the $18,000 has never yet been paid to the complainant.   The first suggestion, that the power has been exercised, comes at the argument upon final hearing. The suggestion is not within the issue upon which the case was tried, and which the defendants expected to meet, and it could not be effective under the pleadings and proofs, even if it were substantial.   I have not been asked to permit the reformation of the pleadings so that it may be properly urged.

The case was put by the pleadings, prepared and presented upon two positions taken by the complainant—*first*, that he took a vested interest in one-third of the residue of his father's estate, subject to a merely discretionary power in Thomas W. Hurff, which died when Mr. Hurff died; and, *second*, in case the court should regard the power as imperative and, in substance, a trust, that it will proceed to execute that trust under equitable rules, and at once pay the $18,000 to the complainant; it being made to appear by the proofs that it is proper and most for his good that the money should now be paid.

The administrators of Mr. Hurff's estate, Mr. Hurff's eldest son, Alfred C. Pedrick and his three sons and the infant daughter of Mrs. Hawkins (Mrs. Hawkins being dead) are made defendants.   Alfred C. Pedrick and his sons have answered.   They insist that, by the will of Joseph D. Pedrick, a trust was created, and that it is not proper now, under the terms of that trust, or most for the complainant's good, that the $18,000 should be paid to him.

Upon the issues thus presented I will determine the case.

It is observed, upon reading the fourth paragraph of the will, that the testator gives, devises and disposes of the residue of his estate in thirds—one-third to his son Jacob. The words " give, devise and dispose of," standing by themselves, are ample to fully vest title in Jacob. But they do not stand alone. They are followed by a restriction. The testator desired his son Jacob to have possession and control of the bequest in his favor; but, for some undisclosed reason, feared to trust him with it until his fitness to care for it should be adequately tested and established. He directed his executor to pay the legacy guardedly to Jacob. Not all at once, but in partial, testing payments—" at such times and in such sums as he * * * shall deem most " for Jacob's " good." If, upon being tested with such partial payments, Jacob should not make proper use of " his money " (evidently meaning the money with which the executor was to experimentally entrust him), then future payments should be limited to amounts necessary for his decent and respectable board and clothing. The executor was not clothed with arbitrary power, which he might or might not exercise, but was entrusted with a power which he was required to discreetly execute. It was imperative that he should test Jacob with partial payments, their amounts and the times at which they should be made alone, being left to his judgment; and he was required to continue them until the entire legacy should be paid, if Jacob should make proper use of the several previous payments.

The power thus given was not a personal confidence which would die with the individual named as executor in the will. It is observed that the testator contemplates and provides for a disposition after the death of his son. If the son should die without receiving the whole of " his money " there was to be a payment to his issue, and, in default of issue, according to the requirements of the seventh paragraph of the will. But, while the will makes provision for the event of the death of the son and a payment after his death, it makes no provision for the event of the death of the executor, Hurff, before the son. The careful provision for the retention of the money until after the

son's death negatives the propriety of an assumption that the testator intended a mere personal confidence or power which should perish with the life of Mr. Hurff. And, in this connection, it is also to be noted that the power is not, in terms, bestowed upon the individual Thomas W. Hurff, but upon the executor of the will. I fail to find anything in the will which necessarily implies a personal reliance or confidence in the individual Hurff. On the contrary, the scheme and language of the will satisfy me that the power was given to the executor *ratione officii* and not individually. Similar to this case was the case of *Flanders* v. *Clark, 1 Ves. 9,* where a mother bequeathed £150 to her son, the principal to be paid by her executors at such times and portions as they should please ; the surviving executor paid the money to the son, and it was held that the power was given to the executors as executors, and survived to the survivor of them, who properly executed it.

Jacob was to be tested by experimental payments, to the end that if he should be found trustworthy he should be fully paid his share of the estate designed for him. And I think that this design is so clearly evinced that the testing of the son by partial payments, as I have said, is imperative. The executor needs no other title to the money than that which he took in virtue of his office to enable him to carry out the testator's direction in this respect.

A mere naked power is never imperative, and hence where, by the death of the donee, or by accident, such a power is not exercised, this court will not execute it. But there are powers which the party to whom they are given is entrusted with and required to execute. The courts consider that this last kind of power partakes so much of the character of a trust, to be executed, that they will not allow it to fail by the failure of the donee to execute it, but will execute it in his place. *1 Story Eq. Jur.* § *248; 2 Sugd. Pow. 168; 4 Kent Com. 344; Wortman* v. *Skinner, 1 Beas. 358.* Such power was held to exist in the case of *Brown* v. *Higgs,* where the testator authorized and empowered his nephew John Brown to receive the remainder of certain rents

&c., and after making therefrom designated disbursements to pay the remainder—

" To such children of my nephew Samuel Brown as my said nephew John Brown shall think most deserving, and that will make the best use of it, or to the children of my nephew William Augustus Brown, if any such there are or shall be."

John Brown died in the testator's lifetime. Sir Richard Pepper Arden, master of the rolls, decided that there was a trust, and that a court of equity would execute it (*4 Ves. 708*), and afterwards, upon a re-hearing of the case, reached the same conclusion. *5 Ves. 495.* The case was then considered upon appeal by the chancellor, Lord Eldon, who affirmed the decree (*8 Ves. 561*), and then by the house of lords, with the same result. *18 Ves. 192.*

In this noted case Lord Eldon said : " It is perfectly clear that where there is a mere power of disposing, and that power is not exercised, this court cannot execute it. It is equally clear, that wherever a trust is created and execution of that trust fails, by the death of the trustee, or by accident, this court will execute the trust. One question therefore is, whether John Brown had a trust to execute or a power and a mere power. But there are not only a mere trust and a mere power, but there is also known to this court a power to which the party to whom it is given is entrusted with and required to execute ; and, with regard to that specie of power, the court consider it as partaking so much of the nature and quality of the trust, that, if the person who has that duty imposed upon him does not discharge it, the court will, to a certain extent, discharge the duty in his room and place. * * * If the power is a power, which it is the duty of the party to execute, made his duty by the requisition of the will ; put upon him as such by the testator, who has given him an interest extensive enough to enable him to discharge it, he is a trustee for the exercise of the power and not as having a discretion whether he will exercise it or not ; and the court adopts the principal as to trust, and will not permit his negligence, accident

or other circumstance to disappoint the interest of those for whose benefit he is called upon to execute it."

I think that the power conferred upon the executor of Joseph D. Pedrick was of the character just indicated; that it did not die with him, but survives, and that it is now incumbent upon this court to execute it in the executor's stead, under equitable rules.

If it be necessary to the proper execution of the power that a new trustee should be appointed, the court will appoint one and direct him in the performance of his duty.   *Weiland* v. *Townsend, 6 Stew. Eq. 393.*

The complainant insists, that it is most for his good and proper that the court, without the intervention of a trustee, should forthwith direct the administrators of Mr. Hurff's estate to account to him and pay him his share of his father's estate, and, in support of this insistment, he has produced evidence as to his character and habits and ability to care for property. Having such evidence before me, I will dispose of this question.

The complainant is a bachelor, about sixty-five years of age. He has led a wandering life and has shown little aptitude or fitness for business.   Whether he is able to manage so large a sum of money as $18,000 does not appear.   The fact that he has providently saved up and laid away about $1,000 is evidence of correct habits and a prudent disposition, but the meagreness of the amount of such providence in one who has reached so great an age, indicates that his financial ability is limited.   His business ventures, so far as proved, have been very insignificant. Indeed, all the accomplishments of his life have been of such a character as to make me seriously doubt whether it is most for his good to at once place $18,000 at his unrestricted disposal. In reviewing the testimony of Mr. Bailey and the course pursued by the executor in this matter, I have been impressed that the executor's power was not executed according to the testator's design.   Periodical payments of mere fractions of income were insufficient to test either the financial ability and prudence of Jacob or his strength to withstand the physically hurtful temptations which usually beset a man with ample means.   Before the

21

entire fund is paid to him I think he should be entrusted with a considerable portion of it. Such a payment would thoroughly test him, and induce a course of conduct which would enable the court to judge of the propriety of directing a surrender of the remainder of the trust to him.

I will decree that the adminstrators of Mr. Hurff account for the fund and pay it over to a trustee, to be appointed by this court. The trustee will be directed to pay the complainant $5,000, and to invest the remainder of the moneys held for him. After the complainant shall have had the $5,000 long enough to test his ability to manage it, and his strength to withstand the temptation to which its possession will expose him, he may apply for direction that the remainder of the sum be paid to him.